UNITED STATES of America

v.

Francisco CASTRO–COELLO.

United States of America

v.

Jose Molina–Gonzalez.

United States of America

v.

Rogelio Guevara–Barrera.

United States of America

v.

Marlon Javier Cruz–Mendoza.

United States of America

v.

Oscar Mauricio Pineda–Maldonado.

United States of America

v.

Miguel Angel Portales–Navarro.

Criminal Action Nos. B–06–483, B–06–696, B–06–727, B–06–788, B–06–790, B–06–858.

United States District Court,
S.D. Texas,
Brownsville Division.

Feb. 6, 2007.

Timoteo E. Gomez, Jeffrey L. Wilde, Hector Casas, Sandra Zamora Zayas, Federal Public Defender's Office, Rene E. De Coss, Attorney at Law, Brownsville, TX, for Defendants.

Terra L. Bay, Daniel Marposon, Angel Castro, William F. Hagen, Osccar Ponce, United States Attorney's Office, Brownsville, TX, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

HANEN, District Judge.

The question presented in these cases is whether under the United States Sentencing Guidelines Manual ("USSG") the second of two state drug possession convictions would be considered an "aggravated felony" resulting in an eight (8) level enhancement under USSG § 2L1.2 after a conviction for unlawfully entering or remaining in the United States. 8 U.S.C. §§ 1326(a), 1326(b) (2007); U.S. Sentencing Guidelines Manual § 2L1.2 (2007). Until recently, the prevailing law in the Fifth Circuit was set out in *United States v. Hinojosa–Lopez*, 130 F.3d 691 (5th Cir. 1997), *overruled by*, *Lopez v. Gonzales*, —— U.S. ——, 127 S.Ct. 625, 629, 166 L.Ed.2d 462 (2006), which held that one felony conviction (whether under state or federal law) for the possession of an illegal substance qualified under § 2L1.2(b)(1)(C) as an aggravated felony resulting in an eight (8) level enhancement. This was the case in the Fifth Circuit, even if the conduct under relevant federal law (Controlled Substances Act) would be punishable as no more than a misdemeanor. *Id.* at 693; 21 U.S.C. § 844(a) (2007).

Each of the Defendants in the above-referenced cases have pleaded guilty to violation of 8 U.S.C. § 1326(a) or § 1326(b).[1] The Defendants, whose Pre-

---

1. Indeed, at the time each Defendant pleaded guilty, the prevailing law in this circuit was that a single drug possession constituted an aggravated felony. As a practical matter, then none of these Defendants are facing any

sentence Investigation Report ("PSI") characterized one of their prior convictions as an aggravated felony predicated on established Fifth Circuit law prior to *Lopez*, have objected to the proposed eight (8) level enhancement. In the case of the other Defendant, Marlon Javier Cruz–Mendoza, whose PSI proposed only a four level enhancement, the United States has objected. Despite the fact that each of these individuals pleaded guilty some time ago, this Court postponed sentencing in anticipation of a decision from the Supreme Court in the *Lopez* case.[2] Thus, the dispute at hand in more practical terms is whether these Defendants derive any benefit from the intervening decision in *Lopez*, or whether their multiple convictions for drug possession make the holding in *Lopez* inapplicable.

## I. *Underlying Law*

Under the USSG, the crime of illegal entry corresponds to a Base Offense Level of eight (8). § 2L1.2(a). An alien convicted of an aggravated felony who is later deported and subsequently returns to this country illegally faces an eight (8) level enhancement to that Base Level. 2L1.2(b)(1)(C). Otherwise, the guidelines would allow only a four (4) level enhancement or none at all. § 2L1.2(b)(1)(D), (E).

The USSG defines "aggravated felony" by referencing "the meaning given that term in section 101(a)(43) of the INA (8 U.S.C. 1101(a)(43))." § 2L1.2 cmt. 3(A). The INA defines the term "aggravated felony" with subcategories such as "illicit trafficking in a controlled substance," which includes a "drug trafficking crime"

as defined in 18 U.S.C. § 924(c). Section 924(c) defines "drug trafficking crime" as any felony punishable under the Controlled Substances Act ("CSA") or under other specific federal provisions.

The meaning of felony for these purposes is defined by the statute which classifies a felony as "an offense for which the maximum term of imprisonment authorized" is "more than one year." 18 U.S.C. § 3559(a); *see Lopez*, 127 S.Ct. at 630 n. 4, 631 n. 7 (selecting that definition as governing and rejecting 21 U.S.C. § 802(13)). Following the subcategories of aggravated felonies found in § 101(a)43 of the INA, Congress made clear that the term includes offenses regardless of whether they are state or federal convictions. 8 U.S.C. § 1101(a)(43). The CSA generally makes most simple possession offenses misdemeanors, punishable by less than one year, but the few relevant exceptions are determinative in these cases. *See* 21 U.S.C. § 844(a). The statute's relevant portions provide:

> It shall be unlawful for any person knowingly or intentionally to possess a controlled substance ... Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, ... except that if he commits such offense after a prior conviction under this subchapter or subchapter II of this chapter, or a prior conviction for any drug, narcotic, or chemical offense chargeable under the law of any State, has become final, he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years.... [3]

---

different sentence now than they did when they pleaded guilty. *See Hinojosa–Lopez*, 130 F.3d at 691. If entitled to relief on the basis of *Lopez*, this Court's judgment would be that each defendant is guilty of violations of §§ 1326(a) and 1326(b)(1).

**2.** The court similarly delayed the sentencing of many other individuals who had only one possession conviction and has already ruled that those individuals were entitled to relief under *Lopez*.

**3.** None of the Defendants object that the prior convictions would not constitute "any

*Id.*

In the recent case of *Lopez v. Gonzales,* the United States Supreme Court addressed the issue in an immigration context as it was reviewing a decision emanating from the Board of Immigration Appeals. 127 S.Ct. at 629 (2006). The Court clearly held that a state offense would only constitute a "felony punishable under the Controlled Substances Act" if the proscribed conduct could have been punished as a felony under federal law. *Id.* at 631. Almost immediately, the Fifth Circuit adopted and applied the *Lopez* ruling to criminal cases. *United States v. Estrada–Mendoza,* 475 F.3d 258 (5th Cir. 2007). The court concluded:

> Given the [Supreme] Court's reference [in *Lopez*] to the Guidelines, its citation to *Hinojosa–Lopez,* and its interpretation of a phrase directly adopted by the Guidelines, *Lopez* ineluctably applies with equal force to immigration and criminal cases.

*Id.* at 261.

Despite *Lopez* and *Estrada–Mendoza,* the question before this Court in these above styled and numbered cases, is seemingly one of first impression. In each case, the Defendant has a conviction for possession of a controlled substance after a prior drug conviction.[4] None of these convictions individually would be an "aggravated felony" subsequent to *Lopez.* *Lopez,* 127 S.Ct. at 631. Thus, the initial question is whether multiple possession convictions, none of which are aggravated felonies in and of themselves, can be considered aggravated felonies under the CSA due to the fact that the Defendant is a repeat offender.

## II. *Analysis*

The Defendants have focused their arguments on three different propositions: (a) that a second drug possession conviction, like the first under *Lopez,* is not drug trafficking; (b) that a § 844(a) recidivist conviction requires notice under 21 U.S.C. § 851(a)(1); and (c) that a finding that a person is punishable as an aggravated felon for two misdemeanors (under § 2L1.2(b)(1)(C)) would render § 2L1.2(b)(1)(E) of the USSG meaningless, and that this provision for a four level enhancement should govern multiple misdemeanor possession convictions, instead.

drug, narcotic, or chemical offense chargeable under the law of any State." § 844(a). "[T]he term "drug, narcotic, or chemical offense" means any offense which proscribes the possession, distribution, manufacture, cultivation, sale, transfer, or the attempt or conspiracy to possess, ... any substance the possession of which is prohibited under this subchapter." § 844(c). Neither do the Defendants object that the prior conviction was not final at the time of the second drug possession, as required by § 844(a).

4. The Defendants' relevant convictions are as follows: (1) Francisco Castro–Coello has a 12/3/93 Texas conviction for possession of a controlled substance and a 3/24/99 Texas possession of a controlled substance conviction; (2) Jose Molina Gonzalez has a 10/21/91 Texas possession of marijuana conviction and a 1/13/93 Texas possession of marijuana conviction; (3) Rogelio Guevara–Barrera has a 9/13/93 Texas deferred adjudication for possession of marijuana, and a 12/5/03 Texas conviction for possession of marijuana; (4) Marlon Javier Cruz–Mendoza has a 3/9/01 Florida conviction for possession of cocaine, a 2/11/05 Florida conviction for possession of marijuana; and a 5/26/06 Florida conviction for possession of cocaine; (5) Oscar Mauricio Pineda–Maldonado has a 6/17/93 California conviction for sale/transportation/offer to sell a controlled substance and a 5/04/00 Texas conviction for possession of cocaine(more than 4 grams and less than 200 grams); (6) Miguel Angel Portales–Navarro has a 4/28/99 Missouri conviction for possession of a controlled substance (methamphetamine) and a 10/08/02 Missouri conviction for possession of marijuana.

## A. Applicability of *Lopez* to Multiple Possessions

■ Although *Lopez* was an immigration case, the Supreme Court was faced with two questions: (1) whether an alien found guilty of one misdemeanor offense of illegal drug possession was guilty of an aggravated felony; and (2) whether he was, therefore, ineligible from applying for discretionary cancellation of removal. The immigration aspect of *Lopez* is not necessarily relevant to these cases, despite the fact that each defendant herein is an alien in the country illegally. The first issue, however, is quite relevant as the characterization of the prior possession convictions determines the appropriate offense level under the USSG. The USSG defines "aggravated felony" by using the meaning given that term in section 101(a)43 of the INA (8 U.S.C. § 1101(a)(43))—thus, the importance of the Supreme Court's analysis of the INA's use of the term "aggravated felony."

*Lopez'* analysis followed a fairly simple line of reasoning:

(1) The INA makes one guilty of an aggravated felony if one has been convicted of illicit trafficking in a controlled substance, including, but not limited, to a drug trafficking crime detailed in 18 U.S.C. § 924(c).

(2) Section 924(c) defines the term "drug trafficking crime" to mean any felony punishable under the Controlled Substances Act (21 U.S.C. § 801, et seq.).

(3) Given the wording of the applicable statutes, a state offense "constitutes a felony under the Controlled Substances Act only if it proscribes conduct punishable as a felony under that federal law." *Lopez*, 127 S.Ct. at 633.

The importance of the Court's reasoning is readily apparent: either a state law felony or misdemeanor can be an "aggravated felony" if it is punishable as a felony under the CSA. The Supreme Court has adopted an analysis consistent with the "hypothetical federal felony" or "hypothetical federal prosecution approach."[5] To that extent, the Supreme Court has adopted the Fifth Circuit proposition that in certain circumstances a misdemeanor under state law might be a felony, or even an aggravated felony, under federal law.[6]

The precise applicability of *Lopez* to the cases at hand, however, is not clear because *Lopez* did not answer the most pressing questions herein. Nevertheless, it cannot be questioned that, as far as it goes, *Lopez* is controlling in an application of the sentencing guidelines because the Fifth Circuit has already so ruled. In *Estrada–Mendoza*, the Court held that *Lopez* must "ineluctably" apply to both immigration and criminal cases. *Estrada–Mendoza*, 475 F.3d at 260–61. While the application of the *Lopez* decision to the USSG case may be ineluctable, the Fifth Circuit did manage to elude, avoid or otherwise abstain from commenting on either the reference in *Lopez* to the factual situa-

**5.** Justice Thomas refers to this as a "hypothetical inquiry" and "hypothetical federal prosecution." *Lopez*, 127 S.Ct. at 635, 637. (Thomas J., dissenting). Although the majority never labels their approach with these labels or uses the word "hypothetical," the dissent clearly recognizes it as such, and the outcome is consistent with that analysis. A good discussion of the various pre-*Lopez* approaches, including the hypothetical felony approach, which different circuits have used, can be found in *Gerbier v. Holmes*, 280 F.3d 297, 312–15 (3rd Cir.2002).

**6.** In one memorable line, the Fifth Circuit held that "a misdemeanor can be an 'aggravated felony,' even though it is not a felony at all." *United States v. Urias–Escobar*, 281 F.3d 165, 167 (5th Cir.2002)(holding a misdemeanor assault was an aggravated felony).

tion currently before this Court or to the fact that the INA *does*, in fact, penalize an alien for mere possession if that alien is a recidivist, with multiple drug convictions. § 844(a), (c).

In *Lopez*, the Supreme Court rejected certain arguments, reasoning that Congress could dictate what an aggravated felony was, even if it did so in "an unexpected way." *Lopez*, 127 S.Ct. at 630. It concluded, however, that "Congress would need to tell us so." *Id.* The Court then admitted that Congress has "told us so" in the recidivist possession provision:

> Congress did counterintuitively define some possession offenses as 'illicit trafficking'. Those state possession crimes that correspond to felony violations of one of the three statutes enumerated in § 924(c)(2), such as possession of cocaine base and *recidivist* possession, *see* 21 U.S.C § 844(a), *clearly fall within definitions used by Congress in 8 U.S.C. § 1101(a)(43)(B), regardless of whether these federal possession felonies or their state counterparts constitute 'illicit trafficking in a controlled substance' or 'drug trafficking'*. But this coerced inclusion of a few possession offenses in the definition of 'illicit trafficking' does not call for reading the statute to cover others for which there is no clear statutory command to override ordinary meaning.

*Id.* at 630 n. 6 (emphasis added). The clear implication by the Court in the phrase, "does not call for reading the statute to cover others," is that "drug trafficking" does cover the exceptional situations mentioned. *See id.* This position is bolstered by the Court's later example that a six gram possession of cocaine base could be a state law misdemeanor, but it would still be an aggravated felony in this context because it is punishable as a felony under federal law. *Id.* at 631–32 (citing other the other exception in 21 U.S.C.

§ 844(a) for possession of cocaine base). The Court reasoned that Congress would not let a state dictate the consequences of federal offenses. *Id.* at 633.

Therefore, the *Lopez* court clearly, albeit in dicta, instructed that any person who can be punished hypothetically for a felony under the recidivist possession portion of 21 U.S.C. § 844(a) is subject to being labeled an aggravated felon, as defined by Congress.

This position not only matches the clear dictates of Congress, it also follows prior Fifth Circuit analysis. In *United States v. Sanchez–Villalobos*, 412 F.3d 572, 577 (5th Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1142, 163 L.Ed.2d 1000, the court explained:

> *Sanchez–Villalobos* was convicted for possession of marijuana in 1997. Because he was convicted of a prior drug offense, his subsequent Colorado conviction for possession of codeine in 2001 could have been punished under § 844(a) as a felony with a penalty of up to two years imprisonment. Had the charge against *Sanchez–Villalobos* for possession of codeine been brought in federal court, it would not, as he contends, only have been punishable as a misdemeanor.

*Id.* at 577 (omitting internal citations) (holding supported on alternate grounds as well). Again in 2006, the Fifth Circuit in *Smith v. Gonzales*, 468 F.3d 272, 277 (5th Cir.2006), wrote:

> Thus, it is only after a prior conviction for a controlled substance violation has become final that the offender may be sentenced under the statute's recidivist sentencing enhancement provision for a period in excess of one year, *elevating the offense to that of a felony.*

*Id.* at 277 (emphasis added); *see also United States v. Price*, 31 Fed.Appx. 158 (5th Cir.2001)(per curiam), *rev'd*, 537 U.S.

1152, 123 S.Ct. 986, 154 L.Ed.2d 888 (2003).

No distinction is made by either the statutes or the Supreme Court as to the application of the § 844(a) recidivist provisions to state felony or misdemeanor "drug, narcotic, [and] chemical offenses." § 844(a), (c). In fact, one of the criticisms of the opinion in the dissent was that under the adoption of the hypothetical felony rule, state misdemeanors, which the federal law might classify as felonies, would in fact become aggravated felonies. *Lopez*, 127 S.Ct. at 635–36 (Thomas J., dissenting). Such is the very situation in which these six defendants find themselves. Each has multiple convictions from a variety of states for possession of controlled substances. They include convictions for possession of methamphetamine, marijuana and cocaine, and they run the gamet in amounts from over four (4) grams of cocaine to up to two hundred (200) pounds of marihuana. It seems beyond question that each individual could have been prosecuted and punished in federal court under § 844(a) as a felon. *See Sanchez–Villalobos*, 412 F.3d at 577; *Smith*, 468 F.3d at 277.

## B. Section 851 Notice Requirement

Defendants argue that to be convicted as a felon for multiple crimes of possession under § 844(a), one is entitled to a notice meeting the requirements of 21 U.S.C. § 851(a). That section holds:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and

serves a copy of such information on the person of counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney the facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts.

§ 851(a)(1). The statute goes on to set out a procedure by which a defendant has the opportunity to deny the existence of the earlier conviction(s) and argue that the conviction was invalid. § 851. If denied, the matter is placed before the court for resolution with the defendant bearing the burden of proof by a preponderance of evidence. § 851(c)(1).

In these cases, the United States concedes that it gave no such notice prior to the second possession conviction. Each of these convictions were in state courts, and the United States was not a party. Each defendant in this instance, with the exception of Miguel Angel Portales–Navarro, was indicted as having an aggravated felony conviction prior to deportation. All of the convictions in question were noted in the Defendants' respective PSIs. With the exception of Marlon Javier Cruz–Mendoza, the PSIs also proposed an eight (8) level enhancement. All defendants subject to this opinion have had an opportunity to object to their convictions and the enhancement, but in each case, the PSI was issued after the plea of guilty.[7]

The crux of the issue then is whether notice of the prior drug conviction under § 851 is required in an illegal entry case where the charge being addressed is the illegality of the individual's presence in the

---

7. The Court emphasizes these factors due to the fact that in oral argument on this issue, attorneys for the Defendants claimed that they were entitled to § 851(a) notice twice (or in the alternative once out of two possible occasions)—once before the qualifying second possession conviction and once before this § 1326 criminal immigration case.

United States, not whether he is guilty of his second drug possession charge. This Court holds that such a notice is not required in this context.

The notice requirement has been addressed by any number of courts in other contexts. The Fifth Circuit has held that the purpose of § 851 is to inform the defendant of the government's "decision to seek enhancement." *United States v. Dodson*, 288 F.3d 153, 159 (5th Cir.2002) (referring to the recidivist provision as enhancement). The Tenth Circuit held that the goal of § 851 was to give the defendant "ample time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential jury verdict." *United States v. Castro–Portillo*, No. 05–5141, 2007 WL 10761, *8, 211 Fed. Appx. 715, 724 (10th Cir. Jan.3, 2007) (not for publication) (citing *United States v. Williams*, 59 F.3d 1180 (11th Cir.1995); *United States v. Hamilton*, 208 F.3d 1165 (9th Cir.2000); *Kelly v. United States*, 29 F.3d 1107 (7th Cir.1994); *United States v. Johnson*, 944 F.2d 396 (8th Cir.1991)).

Although the notice provision is mandatory, some courts seem more inclined to balance the failure to strictly comply with any resulting harm. For example, the Tenth Circuit affirmed Castro–Portillo's enhanced sentence based upon the fact that he could not show how the erroneous information in the notice prejudiced him. *Castro–Portillo*, 2007 WL 10761, at *8. On the other hand, the Eleventh Circuit demands strict compliance. *Harris v. United States*, 149 F.3d 1304, 1306 (11th Cir. 1998). "The Eleventh Circuit and its predecessor court have unambiguously and repeatedly held that a district court lacks jurisdiction to enhance a sentence, unless the government strictly complies with the procedural requirements." *Id.* Indeed, the predecessor court referred to is the Fifth Circuit, and it has established precedent suggesting the need for strict compliance. *See, e. g., United States v. Noland*, 495 F.2d 529, 530 (5th Cir.1974); *Dodson*, 288 F.3d at 160, 161; *but see United States v. Steen*, 55 F.3d 1022, 1026–27 (5th Cir.1995) (holding that erroneous description of offense was not fatal to § 851 notice).[8] The Fifth Circuit has also held that notice is a requirement that can be waived or forfeited. *Dodson*, 288 F.3d at 160–61. Even the United States Supreme Court seems to demand a high level of compliance. *United States v. LaBonte*, 520 U.S. 751, 754, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997). "If the Government does not file [ ] notice [ ] the lower sentencing range will be applied even though the defendant may otherwise be eligible for the increased penalty." *Id.; accord Price v. United States*, 537 U.S. 1152, 1152, 123 S.Ct. 986, 154 L.Ed.2d 888 (2003).

The key to this issue remains the language in Title 18 and the Supreme Court opinion in *Lopez*. Title 18 defines a "drug trafficking crime" as "any felony *punishable* under the Controlled Substance Act." *See* § 924(c)(emphasis added). There is no need that one actually be punished under the CSA, only that one can be or could have been. Notice is needed only when the United States seeks to actually punish someone as a felon under § 844(a). Each of these individuals could have been punished as a felon under § 844(a) had they been so indicted and given the § 851

---

8. *See also, United States v. Price*, No. 00–51078, *2–3, 67 Fed.Appx. 243 (5th Cir. Apr. 23, 2003)(not for publication), *rev'g*, 31 Fed. Appx. 158 (5th Cir.2001) In an unpublished opinion after remand from the Supreme Court, the Fifth Circuit wrote, "In our prior opinion, we concluded that Price's 21 U.S.C. § 844 conviction could have been a felony because of his prior convictions. However, Price did not receive notice that these prior convictions could be used. Thus his 21 U.S.C. § 844 conviction could not be a felony." *Id.*

notice. The Supreme Court in *Lopez*, however, has adopted an analysis consistent with the hypothetical felony rule. *See Lopez*, 127 S.Ct. at 635, 637 (Thomas J., dissenting). Hypothetically, the Defendants could have been prosecuted for a felony violation of § 844(a) and, hypothetically, the government could have then given the § 851(a) notice. *Lopez* instructs both the litigants and courts that if one wants to know what convictions qualify, one should first examine which "state possession crimes [ ] correspond to felony violations [in the CSA], such as possession of cocaine base and recidivist possession." *Id.* at 630 n. 6 "Unless a state offense is punishable as a federal felony, it does not count." *Id.* at 631. The Court continues, "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under federal law." *Id.* at 633. The Supreme Court gives no indication that the United States must prosecute the case or give the notice, which would have been necessary in an analogous felony prosecution—only that it hypothetically could have. The Supreme Court's conclusion explicitly focuses on "conduct punishable" rather than the procedure. *Id.* The court focuses the analysis on the "conduct" the state law "proscribes," not the procedure under which it could be enforced. *Id.*

This Circuit has addressed the interplay between the USSG and § 851 before. In the Career Offender context the court has held:

> The statute does not apply, however, when sentencing is conducted under the Sentencing Guidelines and the defendant receives an increased sentence, which is within a statutory range. Since the Sentencing Guidelines do not require that the defendant be given notice when the Government intends to seek Career Offender status, the Government need not give any notice prior to sentencing pursuant to the Sentencing Guidelines.

*United States v. Marshall*, 910 F.2d 1241, 1245 (5th Cir.1990). The same reasoning would apply to the notice requirements in § 844(a) for a sentencing enhancement under § 2L1.2..

In fact, the Seventh Circuit has addressed the issue of the § 851 notice requirement in the context of a sentencing enhancement. In *United States v. Irby*, 240 F.3d 597, 598 (7th Cir.2001), the court was faced with the contention that one's sentence could not be enhanced under the provision that one possessed a firearm in connection with a felony, because drug possession was a misdemeanor. *Irby*, 240 F.3d at 599–600 (citing USSG § 2K2.1). The Court held that Irby's enhancement was indeed legitimate because he possessed the gun along with marijuana. *Id.* That drug possession "conduct" would have been punishable under § 844(a) for more than one year due to his prior drug convictions. *Id.* His subsequent possession, which was simultaneous with his possession of the gun, was a felony under § 844(a). It found unpersuasive the argument that his drug possession could not be used because Irby was never charged nor convicted of the marijuana possession. *Id.* at 600. It further rejected out of hand the argument that he could not be enhanced, because he did not receive the § 851(a) notice. *Id.* "Simply put, Irby's marijuana possession constitutes 'another felony offense' under § 2K2.1(b)(5)." *Id.* The court explained:

> It does not matter whether the government brought a charge or obtained a conviction on that offense. Because a charge need not be brought before allowing an adjustment under § 2K2.1(b)(5), *an information (which is required to secure the enhanced penalty under § 844(a)) need not be filed before applying an adjustment under § 2K2.1(b)(5).*

*Id.* (emphasis added). The Court concluded:

Irby does not contest the fact that he possessed the marijuana, nor does he challenge the fact that he has four prior state drug convictions. By his own admission, therefore, he qualifies for the enhanced felony provision of § 844(a). *Accordingly, with or without the government filing an information pursuant to § 851, his possession of marijuana on February 11 constituted 'another felony offense' pursuant to § 2K2.1(b)(5).*

*Id.* (emphasis added). The same reasoning applies to an enhancement under § 2L1.2.

This Court acknowledges that the Third Circuit has reached the opposite conclusion. *Gerbier,* 280 F.3d at 316–318; *Steele v. Blackman,* 236 F.3d 130, 136 (3rd Cir. 2001) (interpreting the aggravated felony definition). According to the Third Circuit:

> We concluded that in order for a state drug conviction to constitute a hypothetical federal felony under § 844(a) based on the prior drug conviction enhancement, we must be satisfied that the state adjudication possessed procedural safeguards equivalent to the procedural safeguards that would have accompanied the enhancement in federal court. More specifically, if the crime were prosecuted in federal court, the Government would have had to file an information under 21 U.S.C. § 851 and would have had to prove the prior conviction. At that time the defendant would have had the opportunity to attack the prior conviction as unlawfully obtained.

*Gerbier,* 280 F.3d at 317. Since the prior conviction status was "never litigated as part of a criminal proceeding" that court found the drug offense could not be treated as "punishable" as a felony under § 844(a). *Id.* However this Court finds that decision contrary to the clear congressional intent noted in *Lopez* that the en-

hancement cover conduct "punishable" as a felony under the CSA. *Lopez,* 127 S.Ct. at 633 (interpreting § 924(c)). Since the notice procedure under § 851 is not an element of § 844(a), the United States need not prove it in the context of conviction of felonious conduct in state courts. None of the Defendants have made any specific assertions that their convictions were not obtained in full compliance with constitutional Due Process, other than the complaint they did not receive notice complying with § 851. The Fifth Circuit has never found § 851 to be a constitutional requirement. *See Steen,* 55 F.3d at 1027–28; *United States v. Thomas,* 348 F.3d 78, 86 (5th Cir.2003) (applying test for prejudice based on § 851 error).

This Court finds no reason why the *Irby* and *Marshall* reasoning should not control this interpretation of 21 U.S.C. § 844(a) and 18 U.S.C. § 924(c). The Defendants' second convictions for possession—the ones which would have been punishable as felonies under § 844(a)—in many instances happened years ago, and they took place in various state courts. It would have been impossible for the United States to have given the Defendant an information complying with § 851 at that time. Secondly, the information would have and should have served no purpose, as all the Defendants were being prosecuted under state, not federal law. While academically interesting, this Court finds that in a situation where the issue is whether a prior state court conviction would have been "punishable" under the CSA, there is no need for the United States to have given the § 851(a) notice. That notice is only needed where the United States seeks to actually punish someone under the recidivist provisions of § 844(a).

**C. Construction of USSG § 2L1.2(b)(1)(C) and (E)**

■ The Defendants also argue that an eight (8) level enhancement for two or

more misdemeanor drug possession offenses would be absurd in light of the USSG enhancement of four (4) levels for three misdemeanor "drug trafficking offenses."[9] For the following two reasons, the enhancement for three misdemeanors covered by § 2L1.2(b)(1)(E) is not controlling for the purposes of interpreting the enhancement for an aggravated felony under § 2L1.2(b)(1)(C).

### 1. "Drug Trafficking Offense" Definition is Different from "Drug Trafficking Crime"

While the enhancement for three misdemeanors covers "drug trafficking offense[s]," as defined within the sentencing guidelines, the definition of aggravated felony is defined by reference to a statute which includes "drug trafficking crimes." § 2L1.2. The definition of "drug trafficking offense" is found in the Commentary, "Definitions."[10] However, as noted above, an "aggravated felony" under the USSG "has the meaning given that term in section 101(a)(43) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(43))." § 2L1.2 cmt. 3(A).

■ Defendants' argument first, correctly relies on the court's application of traditional rules of statutory construction to the Sentencing Guidelines. The Fifth Circuit has joined other circuits in declaring that "[i]t is well established that our interpretation of the Sentencing Guidelines is subject to the ordinary rules of statutory construction." *United States v. Crittenden*, 372 F.3d 706, 708 (5th Cir.2004); *see also United States v. Carbajal*, 290 F.3d 277, 283 (5th Cir.2002). Courts have commonly interpreted the Sentencing Guidelines to conform with ordinary rules of statutory construction. *United States v. Rayo–Valdez*, 302 F.3d 314, 320 (5th Cir. 2002) ("A guideline should not be interpreted to render any part of it superfluous."); *United States v. Canada*, 110 F.3d 260, 264 (5th Cir.1997) (applying the rule of statutory construction that courts "are obliged to give effect, if possible, to statutory wording and noting that terms connected by the disjunctive be given separate meanings" to guidelines); *United States v. Gonzales*, 996 F.2d 88, 94 (5th Cir.1993) ("the expression of one thing is the exclusion of another"); *United States v. Rocha*, 916 F.2d 219, 243 (5th Cir.1990) (holding offense categories were not mutually exclusive absent other express intent in the guidelines). The Fifth Circuit has also declined to apply the rule of lenity to the interpretation of guidelines when a guideline is not ambiguous. *United States v. Monjaras–Castaneda*, 190 F.3d 326, 329 (5th Cir.1999); *United States v. Rivera*, 265 F.3d 310, 312 (5th Cir.2001).

Nevertheless, designating different definitions for similar terms in different contexts does not offend the principles applicable to interpreting either statutes or the guidelines.[11]

---

**9.** "[T]hree or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses" § 2L1.2(b)(1)(E).

**10.** " 'Drug trafficking offense' means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."

§ 2L1.2 cmt. 1(B)(iv). It is also established that " 'the guidelines' commentary is authoritative." *United States v. Boudreau*, 250 F.3d 279, 285 (5th Cir.2001) (citing *Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)).

**11.** It goes without saying that the CSA was designed as part of a Congressional scheme designed to combat illegal drugs while the USSG are obviously part of a scheme to provide uniform punishment for similar crimes.

[T]he definition of 'drug trafficking crime' found in § 2L1.2 does not supercede that in 8 U.S.C. § 1101(a)(43) for purposes of the aggravated felony enhancement. Although rendering the guideline less clear than is desirable, § 2L1.2's implication of two distinct definitions of drug trafficking crimes is neither repugnant to principles of statutory construction nor inconsistent with the Sentencing Commission's prior practice. *United States v. Caicedo–Cuero*, 312 F.3d 697, 708–709 (5th Cir.2002); *accord United States v. Soberanes*, 318 F.3d 959 (9th Cir.2003); *United States v. Castro–Rocha*, 323 F.3d 846 (10th Cir.2003); *United States v. Simpson*, 319 F.3d 81, 86 (2d Cir.2002) (holding that "the District Court correctly followed the directions of the Guidelines and applied the greater of the two arguably applicable sentence enhancement levels").

Thus, in this case, a different definition of "drug trafficking" may apply for purposes of the eight (8) level enhancement as opposed to the four (4) level enhancement without offending the ordinary rules for construing the guidelines. The result may be that a defendant with three trafficking "offenses" will receive a four level sentencing enhancement, whereas another defendant with two mere drug possessions, which were misdemeanors in the convicting jurisdiction, will receive an eight (8) level sentencing enhancement.

A drug trafficking "offense" need only be a misdemeanor, meaning "any federal, state, or local offense punishable by a term of imprisonment of one year or less." § 2L1.2 cmt. 4(A). According to the guideline's definition, a drug trafficking "offense" must involve manufacture, import, export, distribution, dispensing, or the possession with intent to manufacture, import, export, distribute or dispense of a controlled substance or counterfeit substance. § 2L1.2 cmt. 1(B)(iv). A drug trafficking "crime," however, must be "punishable" as a felony under the CSA. More specifically, § 844(a) of the CSA explicitly requires that to qualify as an exceptional felony under the repeat offender provision, the prior conviction would have to had "become final" at the time of the later convictions. *See Smith*, 468 F.3d at 277. Additionally, the particular drug involved in the offense would also have to be classified as a controlled substance under the CSA. Neither of these two qualities of a defendant's criminal history would necessarily be required for the four level enhancement for three misdemeanor drug trafficking "offenses" under USSG § 2L1.2(b)(1)(E). Therefore, three hypothetical misdemeanor offenses for a type of drug, which was prohibited under state or local law, but not under the CSA, might merit only a four level enhancement. Similarly, three consecutive misdemeanor offenses for which the later convictions occurred prior to the expiration of the time for seeking appellate review on the earlier convictions might qualify for the four level enhancement, but these offenses would not necessarily be analogous to a final repeat offense, federal felony under § 844(a).[12] Thus, the convictions might not provide a basis for an "aggravated felony" eight level enhancement, even if there were three of them.

As a result, it would not be absurd if some two state misdemeanor offenses were to fall within the ambit of a drug trafficking crime, qualifying the defendant as an

---

*See United States v. Booker*, 543 U.S. 220, 324, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). As such, one should almost expect certain overlaps and differences, but these do not deal a fatal blow to the enforcement of the USSG.

**12.** *See Smith*, 468 F.3d at 277 for a discussion of what constitutes a final judgment under § 844(a).

aggravated felony. There would remain a hypothetical set of state misdemeanor offenses for which three could qualify as "drug trafficking offenses" under § 2L1.2(b)(1)(E) even though they would not qualify as "drug trafficking crimes" under the statutory definition of § 1101(a)(43), for the reasons stated above. However counter-intuitive such a result might be, the Supreme Court has ruled that "legislatures, too, are free to be unorthodox" and that "Congress can define an aggravated felony of illicit trafficking in an unexpected way" where it "tell[s] us so." *Lopez*, 127 S.Ct. at 630. Congress has expressed a clear intent under § 844(a) of the CSA to weigh drug possessions after a prior "drug, narcotic, or chemical offense" more heavily, as exceptions to the classification of mere misdemeanors. *Id.* at 630 n. 4.

### 2. *Enhancement Characteristics Overlap*

The USSG clearly anticipated that there would be overlap among the "specific offense characteristic[s]" which are used to classify the levels. § 2L1.2. In the case of overlapping characteristics, the USSG explicitly resolve any tension with the instruction to "[a]pply the [g]reatest" en-

hancement. § 2L1.2(b); *United States v. Cordoza–Estrada*, 385 F.3d 56, 59 (1st Cir. 2004); *see also United States v. Vargas–Duran*, 356 F.3d 598, 608 (5th Cir.2004). The USSG clearly accounted for the possibility that some offenses may qualify as both drug trafficking offenses and drug trafficking crimes. In that case, the greater aggravated felony enhancement would apply.

The same may be true for the enhancement for three or more misdemeanor "crimes of violence" which are covered by the same four level enhancement in § 2L1.2(b)(1)(E). "Crime[s] of violence" for the purposes of this enhancement are defined in the guideline. Additionally, the definition of "aggravated felony" includes as a subcategory certain "crimes of violence" in 8 U.S.C. § 1101(a)(43)(F). Despite the fact that the terms are exactly the same, like "drug trafficking," the context references distinct definitions.[13] Although both definitions may clearly overlap, it does not render absurd the possible, hypothetical outcome that two of certain offenses will support a greater sentencing enhancement than three of certain other offenses. *See Cordoza–Estrada*, 385 F.3d at 59.

---

13. There are three ways a "crime of violence" may support a sentencing enhancement under § 2L1.2 of the USSG. *See* § 2L1.2(b)(1)(A)(ii), (E); *see also* § 2L1.2.(b)(1)(C); 8 U.S.C. § 1101(a)(43)(F). Two of these enhancements apply the definition of "crime of violence" within the guideline, and one uses a distinct statutory definition for the same term. An aggravated felony, supporting a eight level enhancement, includes "(F) a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year." § 1101(a)(43)(F). That definition references the statute defining a "crime of violence" as either "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense

that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16. A "crime of violence," for which three misdemeanors support a four level enhancement, or a single felony supports a sixteen level enhancement is defined within the guidelines as "any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 2L1.2 cmt. 1(B)(iii).

### III. *Conclusion*

The Defendants' objections to the eight (8) level enhancement based on prior aggravated felony convictions are hereby overruled. The United States's objection to the four level enhancement for Marlon Javier Cruz–Mendoza is granted.

This Court will address individualized objections orally on the record at sentencing. Additionally, the Court notes that after it orally announced this ruling on the aggravated felony enhancement, it offered all six defendants a continuance to investigate and contest any aspect of their past convictions or any other aspects of the PSI. Two of these six defendants accepted the Court's offer.