**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-60884

UNITED STATES OF AMERICA,

Plaintiff-Appellee

VERSUS

CUYLER A. DODSON,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

April 2, 2002

Before GARWOOD, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Cuyler A. Dodson appeals his guilty-plea conviction and sentence for simple possession of crack cocaine. He asserts that the district court erred in holding that he was subject to an enhanced maximum of two years' imprisonment under 21 U.S.C. § 844 because the Government failed to file an information under 21 U.S.C. § 851 giving notice of its intent to use his prior drug conviction for that purpose. Dodson also asserts that the district court erred in departing upward to sentence him above the guideline range and in denying Dodson's motion to suppress evidence. Finding no error, we affirm.

## I.

Based on our review of the record, the district court was entitled to find the following facts from the evidence presented at Dodson's suppression hearing. Frank Bell and Nick Clark are part-time reserve captains with the Hinds County Sheriff's Department. On March 30, 2000, Clark received a tip from a reliable informant that drugs were being traded for sex at a house in Jackson, Mississippi and discussed that information with Bell. They recognized the address as having been the site of past drug arrests. Using their own unmarked cars, Clark and Bell proceeded to the house to confirm its location. As Bell approached the residence, he saw Dodson on the porch of the house. Dodson, an accountant with a prior conviction for drugs, was wearing a suit and driving a Mercedes SUV. His affluence aroused Bell's suspicion, so he turned around to stop Dodson and talk to him. While Bell was turning around, Clark arrived and saw Dodson run to the Mercedes and drive away. When they saw Dodson drive through a stop sign, Bell turned on his blue lights to stop him. Dodson reacted by speeding away. Bell pursued Dodson for some distance until he found the Mercedes parked on the side of the road and performed a "violation of traffic ordinance" stop. Bell called Clark and told him of his location, then called in a check on Dodson's driver's license. Clark arrived while the check was being performed and read Dodson his *Miranda* warnings, either before or after the check came back.[1] The license check disclosed that Dodson had an outstanding warrant for driving with a suspended license. After being asked if there was anything in the vehicle the officers should know about, Dodson gave a matchbox containing cocaine residue to Clark,[2] who arrested Dodson

---

[1] Clark testified that he read Dodson his *Miranda* rights after the outstanding warrant was discovered, while Bell testified that Clark read Dodson his rights before that point.

[2] One version of the story has Dodson giving the matchbox to Bell.

for both the warrant and the traffic violations. Bell then searched Dodson pursuant to his arrest and found two crack shooter pipes and multiple rocks of crack cocaine in the pockets of his clothing. Dodson exhibited mood swings during the stop, sometimes being cooperative and other times belligerently naming important people whom he knew. Dodson then signed a consent to search form which covered not only the car but also his house, six miles away. He then volunteered to take the officers to his home and show them his additional narcotics. The officers searched the Mercedes thoroughly, finding marihuana in the glove compartment.

Bell, Clark and other officers traveled to the residence, where Dodson opened a safe and showed the officers the cocaine inside. He also told them the locations of several firearms in the house. Bell also discovered crack cocaine paraphernalia in ashtrays. During this time, Dodson bragged about his connections and claimed that no prosecution would ever be brought against him. He did not request an attorney until after the house was searched.

On May 10, 2000, Dodson was indicted on two counts: possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and simple possession of 9.5 grams of cocaine base in violation of 21 U.S.C. § 844(a). He filed a motion to suppress, which the court heard on August 3 and 8, 2000. After hearing the testimony, the district court denied the motion even before the attorneys made their closing arguments. The next day, Dodson entered a plea agreement which required him to plead guilty to the second charge in return for dismissal of the felon in possession charge; Dodson reserved the right to appeal the denial of his motion to suppress. At the plea colloquy, the parties disputed the quantity of drugs but further debate on this issue was postponed until the sentencing hearing.

At the sentencing hearing on October 20, 2000, the government moved to withdraw its plea

agreement because it had misunderstood the effect of *Apprendi* on the drug quantity issue.[3]  The government's concern was that under *Apprendi*, its failure to prove the quantity of drugs at the plea colloquy would limit Dodson's maximum sentence to two years instead of twenty.  A discussion ensued as to what the maximum sentence would be under various scenarios regarding number of prior convictions and quantity of drugs under 21 U.S.C. § 844.  The court continued the hearing and requested briefing on whether the government could withdraw its plea agreement.

At the second hearing on November 7, 2000, the government abandoned its motion to withdraw the plea agreement and announced that an agreement had been reached with the defendant that the appropriate penalty would fall within the section of 21 U.S.C. § 844 that applies to a defendant with one prior conviction and no drug quantity proven.  The sentencing range under that provision is not less than 15 days, not more than 2 years, and a fine of not less than $2,500.  The government then asked the judge to sentence Dodson to the full statutory maximum.

The court sentenced Dodson to the full two years, departing upward from the guideline range of zero to six months.  The court felt that several factors justified the upward departure, including the government's error in charging him under a statute that did not take the full 9.5 grams of crack cocaine into account, his prior convictions (which could not be used to increase his criminal history category), the felon in possession charge which had been dismissed, his testing positive for drug use while on bail, and his disregard for the law as evidenced by his braggadocio during his arrest.

Dodson timely appealed.

---

[3]  Apprendi v. New Jersey, 530 U.S. 466 (2000).

## II.

The only substantial issue in this appeal is Dodson's argument that the district court erred in enhancing his sentence above the statutory maximum of one year, under 21 U.S.C. § 844(a), because the government did not file a notice of intent to seek an enhanced sentence on the basis of a prior conviction as required by 21 U.S.C. § 851. The grand jury indicted Dodson under 21 U.S.C. § 844(a). Section 844 provides various punishment ranges for simple possession of a controlled substance. The base statutory maximum is one year. If the defendant has a prior drug conviction, the sentence range increases to 15 days to 2 years.[4] The district court sentenced Dodson to 24 months imprisonment under this higher sentencing range.

Dodson argues that this was improper because the government failed to comply with the notice procedures of 21 U.S.C. § 851. Section 851 states:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for such person) stating in writing the previous convictions to be relied upon . . .

The government concedes that it did not comply with this provision by filing a separate information document. Dodson did not object to the lack of information at any time in the district court.

The briefs and argument of the parties raise three issues. First whether the requirements of 21 U.S.C. § 851 can be satisfied by other filings and admissions. Second, whether Dodson waived his right to contest the lack of information filing by the government, and finally, whether Dodson forfeited his right to have this error corrected by failing to object to the lack of information before the district court. We will address each issue in turn.

---

[4] 21 U.S.C. § 844(a).

A.

First, the government suggests that the indictment in this case, along with other filings and statements by the defendant, satisfies the requirements of 21 U.S.C. § 851 because it contains the correct name of Dodson's prior offense, its date, venue and cause number and was served on the defendant. Count 1 of the indictment charged Dodson with a violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), knowing possession of a firearm by a convicted felon and identified the underlying prior conviction as possession of marijuana more than an ounce on March 14, 1984, in the Circuit Court of Hinds County, Mississippi, in Cause No. X-1108. During the suppression hearing, the defendant testified that he had previously been convicted of the drug offense in question and that the conviction had been affirmed by the Supreme Court. Also, the Presentence Investigation Report noted the 1984 felony drug conviction at paragraph 33. Dodson did not object to the validity of the conviction in his objections to the PSI. The government argues that based on this information the defendant received complete and accurate information regarding his prior conviction in writing, filed with the court and served on him, which satisfies the requirements of § 851. We disagree.

One goal of the Comprehensive Drug Abuse Prevention and Control Act of 1970, of which 21 U.S.C. § 851 is a part, was to make the penalty structure for drug offenses more flexible.[5] Whereas the prior version of the statute made enhancements for prior offenses mandatory, the new statutory scheme gave prosecutors discretion whether to seek enhancements based on prior convictions.[6] Accordingly, the statute established in § 851 the requirement that the government inform defendants of its decision to seek enhancement and the prior convictions to be relied upon in

---

[5] United States v. Noland, 495 F.2d 529, 532-33 (5th Cir. 1974).

[6] Id. at 533.

6

the proposed enhancement.[7]  Although the information in the indictment and PSI might serve to inform Dodson of the government's knowledge of his prior conviction, it does not accomplish the main purpose of § 851 which is to inform the defendant that the government intends to seek a sentencing enhancement based on that conviction.  Dodson's lack of surprise and admission of his prior conviction cannot overcome the government's failure to file the information required by § 851.[8]

B.

Dodson argues further that the requirement in § 851 to file the information as a prerequisite to sentencing enhancement is absolute.  Dodson does not go so far as to say the district court is without jurisdiction to sentence him.  At oral argument counsel for Dodson conceded and we agree that whether or not the government files a timely information under § 851, the district court had subject matter jurisdiction over his case under 18 U.S.C. § 3231.  See also United States v. Severino, 268 F.3d 850, 856-57 (9th Cir. 2001).[9]  Rather his position is that the requirements in § 851 are not waivable or subject to forfeiture as a result of his failure to object.  Again, we disagree.

Waiver and forfeiture are two different means by which a defendant may react to an error made by the government or the district court in the proceedings in his case.  Waiver is the "intentional

---

[7]  Id.

[8]  Id.

[9]  Although certain cases in this circuit and others have referred to the requirement in § 851 as "jurisdictional," we read those cases as referring not to subject matter jurisdiction but rather to the district court's authority to impose a specific sentence.  United States v. Cevallos, 538 F.2d 1122, 1125-26 (5th Cir. 1976)(interpreting United States v. Noland, 495 F.2d 529 (5th Cir. 1974) to mean that filing of the information is a jurisdictional requirement.)  A court with proper subject matter jurisdiction can exceed its authority or commit other error without loss of jurisdiction.  United States v. Severino, 268 F.3d at 857.

relinquishment of a known right."[10] It occurs by an affirmative choice by the defendant to forego any remedy available to him, presumably for real or perceived benefits resulting from the waiver. We recognize that whether a particular right may be waived, whether the defendant must personally participate in the waiver, whether certain procedures are required to properly effect a waiver and whether the defendant's choice must be specifically informed or voluntary all depend on the particular right at stake.[11] Considering the right protected by § 851, we see no reason why the rights afforded under that statute may not be waived.

We start from the premise that waiver is presumptively available absent some sort of express statement otherwise.[12] "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution," including the double jeopardy defense, the privilege against compulsory self-incrimination, the right to a jury trial, the right to confront one's accusers, and the right to counsel.[13] The Supreme Court has specifically stated that "absent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties."[14] There is no indication in 21 U.S.C. § 851 that it was intended to be an absolute, nonwaivable requirement. The rule in § 851 does not affect any fundamental constitutional right, which might weigh against allowing waiver of

---

[10] United States v. Olano, 113 S.Ct. 1770, 1777 (1993), quoting Johnson v. Zerbst, 304 U.S. 458, 464, 82 L.Ed. 1461, 58 S.Ct. 1019 (1938).

[11] Olano, 113 S.Ct. at 1777.

[12] United States v. Mezzanatto, 115 S.Ct. 797, 801 (1995).

[13] Id.

[14] Id.

8

its requirements. Further, waiver of the requirement of filing an information in this statute furthers and is consistent with the practice of allowing plea agreements by criminal defendants. We join the Ninth and First Circuits in concluding that, in the absence of a jurisdictional defect or other compelling reason, nothing prevents an informed defendant, represented by an informed attorney, from waiving the requirements of § 851.[15] Waiver extinguishes an error, taking it out of Federal Rule of Criminal Procedure 52(b).[16]

If, as in this case, a legal rule is violated and the violation is not waived by the defendant, an error occurs within the meaning of Rule 52(b).[17] Forfeiture is "the failure to make the timely assertion of a right," generally by failure to object to an error in the proceedings.[18] In the absence of an objection, the error is forfeited, meaning that plain error review applies.[19] We see no reason why the provisions of § 851 should not be subject to forfeiture. The same rationale applied above supports a conclusion that "[b]ecause section 851(a)(1)'s temporal requirements exist for the defendant's benefit, it makes perfect sense to give the defendant the power to waive (and the obligation not to forfeit) strict compliance with them."[20] The Supreme Court has warned against the creation of exceptions to Rule 52(b), warning that courts have no authority to do so.[21] It applied the plain error

---

[15] United States v. Severino, 268 F.3d 850, 858 (9th Cir. 2001); Prou v. United States, 199 F.3d 37, 47 (1st Cir. 1999).

[16] Olano, 113 S.Ct. at 1777.

[17] Id.

[18] Id.

[19] Id., Fed. R. Crim. Proc. 52(b).

[20] Prou v. United States, 199 F.3d at 47.

[21] Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 1548 (1997).

review standards of Rule 52 to the failure to submit an element of the offense to the jury.[22] Although the seriousness of the error claimed is not a factor in deciding whether Rule 52(b) applies, it seems clear to us that if Rule 52(b) applies to an error in jury instructions, it must certainly apply to the requirements of § 851.

C.

Having decided that § 851 is subject to both waiver and forfeiture, we turn now to the record to determine if Dodson waived or forfeited his rights under that statute. The argument that Dodson waived any failure by the government to file the information required by § 851 is based on the following sequence of events. First, Dodson pled guilty only to possession of cocaine charged in Count 2, leaving open the issue of drug quantity until sentencing, in exchange for the government dropping the gun charge in Count 1. Between the guilty plea and the first sentencing hearing, the parties became aware of the effect of the Supreme Court's decision in *Apprendi* on the lack of agreement as to drug quantity. The government sought to set aside the plea agreement. If the government had been able to set aside the plea agreement, Dodson would have been faced with the charges under Count 1 and the risk of significantly more jail time. The district court directed the parties to brief the issue of whether the government could set aside the plea and what sentencing range should apply to Dodson. At the second sentencing hearing, the government announced that it was withdrawing its motion to set aside the plea agreement. The government also agreed that one of Dodson's prior convictions for a drug-related charge, which had been expunged, could not be counted against him and that Dodson did not contest the validity of the 1984 drug conviction. Then, the following exchange took place:

---

[22] Id.

10

[PROSECUTOR] The other matter was a sentencing range for this matter. Given the decision in *Apprendi* and the resulting effects, counsel for the government and for the defense agree that under Title 21, Section 844, the appropriate penalty would fall within the section of that statute that provides that the defendant who has one prior conviction be sentenced to a term of not less than 15 days, not more than two years, and a fine of not less than $2,500.

THE COURT: All right. Mr. Collette, do you agree with the statements just made to the court by the Assistant United States Attorney?

MR. COLLETTE: I believe so, your Honor.

By agreeing that the appropriate sentencing range was 15 days to two years, Dodson, through his counsel necessarily agreed that his prior conviction would be applied to enhance his sentence. Although Dodson was not specifically queried regarding his understanding of this agreement or his acquiescence in it, we are satisfied that Dodson, through the actions of his counsel waived his right to contest the lack of information under § 851. Clearly, it was to his benefit to maintain the plea agreement and thereby avoid the risk of reinstatement of the gun charge. His agreement to allow sentencing enhancement without compliance with § 851 allowed him to do so.

Alternatively, and even if Dodson did not waive § 851's requirement that the government inform him of its intent to enhance his sentence based on the 1984 conviction, we are satisfied that he forfeited his right to complain of this error by failing to object. If Dodson had objected to the failure to file the required information, there is no question that precedent in this circuit would require us to remand for reduction of sentence.[23]    In light of his failure to object however, we must apply Rule 52(b) to this forfeited error. Before an appellate court can correct an error not raised at trial, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but

---

[23]    Noland, 495 F.2d 529 (5th Cir. 1974).

11

only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"[24] The court's imposition of a two-year sentence under these circumstances where the government failed to file the information required by § 851 is an error, that is obvious and affects Dodson's substantial rights as it resulted in an enhanced sentence. However, we conclude that the lack of the bill of information in this case did not seriously affect the fairness and integrity of the judicial proceedings. As noted above, Dodson agreed that his prior conviction was valid, had notice that the government was aware of his criminal history and agreed to the sentencing range that resulted from the application of the enhancement. Dodson had a number of lucky stars that lined up in his favor in this case. The recent *Apprendi* case prevented the government from asking for sentence enhancement based on drug quantity, which it almost surely planned to do when it agreed to drop the gun count in the plea agreement. The government then decided to abandon its motion to withdraw the plea. Dodson has never asked to withdraw his plea and does not seek to do so now. Given the quantity of drugs that were involved and the mandatory sentence he faced on the gun count, Dodson received a much lighter sentence than he had any reason to hope for. No "miscarriage of justice" will result if we do not notice this error.[25]

### III.

Dodson argues next that the district court abused its discretion in granting an upward departure based on several aggravating factors. A decision to depart from the guidelines is reviewed

---

[24] Johnson v. United States, 520 U.S. 461, 117 S.Ct 1544, 1549 (1997)(internal citations omitted); Olano, 507 U.S. at 734, 113 S.Ct. at 1777.

[25] Olano, 507 U.S. at 736, 113 S.Ct. at 1779.

for abuse of discretion.[26] The district court listed the following bases for upward departure: the quantity of drugs in Dodson's possession, uncounted prior criminal history, the dismissed firearm charge, and Dodson's disregard for the law as evidenced by his behavior at the time of his arrest and continued drug use while free on bail. All of these factors are proper factors on which to base an upward adjustment and taken on a cumulative basis are more than adequate to support the district court's decision to depart from the guideline range.[27]

## IV.

Finally, Dodson argues that the district erred in denying his motion to suppress. Based on our review of the record, the district court had substantial evidence from which to conclude that Dodson consented to the searches after being properly informed of his Miranda rights. These findings were not clearly erroneous.

## V.

For the foregoing reasons, Dodson's conviction and sentence are AFFIRMED.

---

[26] Koon v. United States, 518 U.S. 81 (1996); United States v. Wilder, 15 F.3d 1292, 1300 (5th Cir. 1994).

[27] United States v. Keith, 230 F.3d 784 (5th Cir. 2000)(drug quantity); United States v. Ashburn, 38 F.3d 803 (5th Cir. 1994)(prior criminal history and dismissed counts); United States v. Juarez-Ortega, 866 F.2d 747 (5th Cir. 1989)(possession of a weapon); United States v. George, 911 F.2d 1028 (5th Cir. 1990)(post-arrest conduct); also U.S.S.G. § 4A1.2(j)(expunged convictions); U.S.S.G. § 5K2.21 (charges dismissed as part of a plea agreement).

S:\OPINIONS\PUB\00\00-60884.CR0