## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 29, 2012

No.  11-20633
Summary Calendar

Lyle W. Cayce
Clerk

U.S. COMMODITY FUTURES TRADING COMMISSION,

> Plaintiff - Appellee

v.

MARK E. RICE,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-cv-2446

Before JONES, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

The United States Commodity Futures Trading Commission ("CFTC") brought a civil action against defendant Mark Rice, among others, alleging violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.* (2006), as amended by the Food, Conservation and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008).  The complaint alleges that defendant

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20633

Financial Robotics, Inc. ("FinRob"), acting through its agent defendant Rice, made fraudulent misrepresentations by which it obtained approximately $10 million belonging to 125 fraud victims. On August 8, 2011, the district court granted the CFTC's motion for a preliminary injunction against Rice freezing his assets. Rice appeals the grant of a preliminary injunction (ECF No. 34) and two supplemental orders (ECF Nos. 40 and 43) that extended a statutory restraining order and confirmed the appointment of a receiver, and added other entities to the list of enjoined parties.

## BACKGROUND

Rice was an officer and agent of FinRob. FinRob was incorporated in Texas in 1998 and operated as an unregistered intermediary in off-exchange foreign currency trading ("forex") prior to its involuntary dissolution in November of 2009. The CFTC alleges that Rice, as part of a scheme operated from 2006 through February 2009, fraudulently solicited and obtained approximately $10 million from Robert P. Copeland on the pretext that it would be invested "risk free" in forex contracts.

Copeland stated by declaration that Rice induced him to invest approximately $10 million in forex trading based on fraudulent representations. Rice and Copeland met at a financial seminar in Los Angeles, California. (Copeland Decl. ¶ 3, R. at 253.) Copeland was looking for investment opportunities offering higher returns for money he had obtained defrauding investors (for which he is currently incarcerated).[1] Copeland spoke with Rice multiple times on the telephone and met him in person. Rice told Copeland that the automated forex software trading program that Rice had developed for FinRob was tested as capable of generating "phenomenal returns" of up to 30% per month and that the investment would be "risk free" because FinRob

---

[1] Copeland's fraud is unrelated to Rice's apart from Rice being the only source of remuneration available to Copeland's victims.

2

No. 11-20633

maintained an insurance policy to protect the principal, and because only a small portion of the principal would be invested at any given time. (*Id.* ¶ 3–4, R. at 253–54.) Rice also told Copeland that "his actual forex trading was generating returns of 5–10% per month" and that he "guaranteed . . . [he] would not lose any of [his] principal." (*Id.* ¶ 4, R. at 253–54.) Rice told Copeland that he owned two companies—Commodity Futures and Options Services Inc. ("CFOS")[2] and FinRob. (*Id.* ¶ 5, R. at 254.)

Over a period of time, Copeland wired approximately $10 million to FinRob and another entity under Rice's control. In January of 2007, Copeland opened a trading account at Interbank FX and deposited approximately $500,000 at Rice's direction. (*Id.* ¶ 7.) After experiencing some losses, Rice told Copeland that he could avoid future losses by withdrawing his funds from the Interbank FX account and depositing them directly with Rice. (*Id.* ¶ 8–9.) Rice further convinced Copeland to wire another approximately $9 million to accounts held by CFOS and FinRob, ostensibly to be invested in forex trading. (*Id.* ¶ 10, R. at 255.) Between July 2007 and September 2008, Rice wired approximately $1.5 million to Copeland as purported earnings on Copeland's forex investments. (*Id.* ¶ 11.) Rice told Copeland weekly over the phone that Copeland's funds "consistently earned returns between 5–9% per month and experienced no losses." (*Id.* ¶ 12.) Copeland broached liquidating his investment with Rice at a September 2008 meeting. (*Id.* ¶ 13.) At that time, Rice provided Copeland an account statement showing a balance of more than $15 million. (*Id.* Ex. H, R. at 297.) Rice asserted that if Copeland kept his money with Rice, then

---

[2] Hal Swanson, former president of CFOS, testified that Rice was a part owner of CFOS. (R. at 667.)

3

No.  11-20633

Copeland's account balance would increase to approximately $20 million by January of 2009.  (*Id.* ¶ 13.)[3]

In late October 2008, Rice told Copeland that he had some "margin problems" that he had to travel to England to address.  (*Id.* ¶ 14, R. at 256.)  In mid-November 2008, Rice told Copeland that all of Copeland's money was gone. (*Id.* ¶ 15.)  In February 2009, Rice told Copeland, in response to a question about the insurance policy, that Copeland's investment had not been insured.  (*Id.* ¶ 16.)  Rice later sent Copeland approximately $770,000 in repayment.  (*Id.* ¶ 17.)

On June 29, 2011, the CFTC filed a complaint and an *ex parte* motion for a statutory restraining order against Rice and FinRob.  The CFTC asked for an order freezing the defendants' assets, appointing a temporary receiver, permitting the CFTC to inspect the defendants' records, and ordering the defendants not to destroy records.  On June 30, 2011, the district court entered a restraining order that demanded an accounting be delivered by the defendants within five days of service.  On August 8, 2011, the district court granted the CFTC's motion for a preliminary injunction (ECF No. 34) and later provided two supplemental orders (ECF Nos. 40 and 43).  On September 6, 2011, Rice filed a notice of appeal of those three orders.

Rice objected to the accounting on the basis that it violated his Fifth Amendment right against self-incrimination.  After the preliminary injunction was granted, he submitted three loose leaf notebooks for *in camera* review, claiming they contained information privileged under the Fifth Amendment. The district court reviewed those materials *in camera* prior to the show cause hearing on September 19, 2011.  (R. at 1090.)  In open court at the hearing, the district court addressed Rice's objections by explaining that only records, and not

---

[3] In a section of a motion to dismiss styled as an Answer, Rice admitted to handling investments for Copeland but denied making any guarantees as to risk, returns, or insurance. (ECF No. 20.)

No. 11-20633

explanations of those records, as Rice had assumed, were required for an accounting. At another show cause hearing held on October 4, 2011, Rice testified extensively as to the contents of those records.

## STANDARD OF REVIEW

"The standard of review for the granting of a preliminary injunction is whether the district court abused its discretion." *Holland Am. Ins. Co. v. Succession of Roy*, 772 F.3d 992, 997 (5th Cir. 1985). The plaintiff has the burden of introducing sufficient evidence to justify the grant of a preliminary injunction. *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 578-79 (5th Cir. 1974).

## DISCUSSION

### I.    Sufficiency of Evidence

Rice contends that the district court did not have sufficient evidence to grant the preliminary injunction. Under the CEA, it is unlawful for any person "to cheat or defraud or attempt to cheat or defraud" another person in connection with a commodity futures contract, 7 U.S.C. § 6b(a)(2)(A), or "willfully to deceive or attempt to deceive the other person" in connection with a commodity futures contract or order, or in acting as an agent for such contracts or orders, *id.* § 6b(a)(2)(C). Section 6c of the CEA, 7 U.S.C. § 13a-1, authorizes the CFTC to seek injunctive relief against any person whenever it appears that that person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the CEA or any rule, regulation, or order thereunder.

The primary question at hand is whether sufficient evidence was presented to establish that Rice willfully deceived Copeland by stating that Copeland's investment would be "risk free" and that it was insured. The CFTC relies entirely on Copeland's declaration to establish these facts. In that declaration, Copeland stated that Rice told him his forex trading software was

5

capable of generating "phenomenal returns" of up to 30 percent per month, that his investment would be "risk free," that only a small portion of his principal would be invested, that his principal would be insured, and that he was guaranteed not to "lose any of [his] principal." Rice objects that this was the only evidence relied on by the district court to establish fraud and that he did not have a chance to cross-examine Copeland. However, Rice did not provide any evidence in rebuttal, not even a personal affidavit. Nor did he seek to bring Copeland into court so he could be cross-examined. The CFTC met its burden of production by supplying Copeland's uncontradicted declaration, and Rice failed to provide evidence in rebuttal. As there are no other required elements in doubt, the district court relied on sufficient evidence.

## II.    Peripheral Claims

Rice also argues that the trial court did not have jurisdiction over transactions which occurred prior to 2008, that the trial court erred by denying his claim of Fifth Amendment privilege, and that the trial court erred in authorizing the receiver to freeze and dispose of Rice's assets. Each of these arguments is unavailing.

Rice filed a motion to dismiss, for lack of subject matter jurisdiction, all claims based on transactions which occurred prior to June 18, 2008, on the basis that the CFTC lacked jurisdiction over such transactions before the CRA was passed (ECF No. 34.) The district court denied Rice's motion from the bench on September 19, 2011, eleven days *after* Rice filed this appeal. An order that does not yet exist cannot be appealed, nor can an order be added to an appeal *post hoc*. *NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1269–70 (5th Cir. 1994). Nor is the denial of a motion to dismiss an appealable, final order. *In re Greene Cnty. Hosp.*, 835 F.2d 589, 596 (5th Cir. 1988).

Rice argues that the district court should have first reviewed *in camera* materials he claimed were privileged under the Fifth Amendment before it

granted the CFTC's motion for preliminary injunction. However, the district court *did* eventually review *in camera* the materials provided by Rice. At the subsequent show cause hearing, held on September 19, 2011, the district court informed Rice that only records, not his explanation of those records, was necessary for the required accounting. Further, Rice later testified extensively as to the contents of those records at another show cause hearing held on October 4, 2011. (R. at 792, 798, 806–07.) If mootness "means anything, it means in most cases that one cannot successfully appeal when a district judge has already given the relief sought in the court of appeals." *United States v. Davis*, 103 F.3d 48 (7th Cir. 1996). A defendant "may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution, including . . . the privilege against compulsory self-incrimination." *United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002) (internal quotation marks omitted). Based on these facts, Rice's Fifth Amendment claims are all mooted, waived, or both.

Rice also urges us to hold that the district court erred in authorizing the receiver to freeze and dispose of Rice's assets without proof that such assets were derived from a fraudulent activity and without a trial on the merits. The court's order authorizing a sale was not, however, entered until January 2012; was not within the scope of the September notice of appeal; and has never been properly appealed. We lack jurisdiction to consider this order.

## CONCLUSION

Because the district court relied on sufficient evidence in granting the CFTC's motion for a preliminary injunction and because each of Rice's other arguments are without merit, the district court's judgment is **AFFIRMED.**