# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-31034

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ANTONIO LUNA VALDEZ, JR.

Defendant-Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

December 16, 2013

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:06-CR-60074-7

Before DAVIS, GARZA, and DENNIS, Circuit Judges.

PER CURIAM:*

Antonio Luna Valdez, Jr ("Valdez") appeals from his conviction and sentencing on a charge of Conspiracy to Possess with Intent to Distribute Cocaine, Cocaine Base and Marijuana, in violation of 21 U.S.C. § 846. The district court imposed a sentence of life imprisonment pursuant to the recidivism-based sentencing enhancement provisions of 21 U.S.C. § 841(b)(1)(A). The merits of the underlying criminal charge are not contested in this appeal. Rather, Valdez challenges the procedural propriety of several

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-31034

aspects of the prosecution and trial.   Specifically, he claims (1) that the district court erroneously limited the scope of cross-examination for a key witness, violating the Confrontation Clause, (2) that a pre-trial delay due to a mistrial and an internal investigation of the government's agents violated his constitutional Speedy Trial rights, (3) that the district court erred in failing to decide his motion to dismiss under the Speedy Trial Act,  18 U.S.C. § 3161, and (4) that the  district court erred in applying the sentence enhancement because the government did not comply with prerequisite notice provisions of 21 U.S.C. § 851.   For the following reasons, we AFFIRM the judgment of the district court.

## I

The indictment alleged Valdez was a participant in a large conspiracy to import and distribute controlled substances.  The initial indictment was filed in November 2006.  Valdez was detained pending trial.  On May 10, 2007, the United States filed an Information to Establish Prior Conviction, asserting that Valdez was subject to enhanced sentencing because of prior drug convictions.  *See* 21 U.S.C. § 841(b)(1)(A).  The government filed an Amended Information on December 22, 2008, supplementing the first with an additional prior conviction.

Trial commenced on January 7, 2009, but was interrupted when Valdez's trial counsel, Jack Wolfe ("Wolfe"), became seriously ill.   Because Valdez insisted that Wolfe continue to represent him, the court granted a mistrial. After certain filings and a hearing concerning Wolfe's competence to continue on the case, the court appointed Roy Richard, Jr. ("Richard") as Valdez's counsel of record on August 20, 2009.  The retrial was initially calendared for March 25, 2010, but Valdez filed a motion to continue, with a waiver of speedy trial protections, so that Richard could better prepare.   The district court granted the motion, resetting the trial date for August 30, 2010.

2

No. 12-31034

Less than a month before the second trial, Valdez and his co-defendants filed another motion to continue and asked to present "extremely serious legal and factual reasons" to the district court.  The United States opposed the continuance.  At a hearing, defense counsel informed the court, *in camera*, that the Department of Homeland Security and the Department of Justice were conducting investigations into alleged misconduct, including witness tampering and subornation of perjury, by the prosecution and DHS case agents—Case Agent Catalan ("Catalan"), in particular.  Richard stated his belief that taking Valdez's case to trial before the investigation was completed would cause "a train wreck."  After the hearing, the district court confirmed the existence of the investigation, and granted a continuance, stating that the trial would be reset "when this matter is in a proper posture for trial."

After a number of months of investigating these allegations, the inspectors found no evidence of criminality or wrongdoing, but noted that the initial concerns were not without merit.  The court set a new trial date.  On September 14, 2011, a Second Superseding Indictment charged Valdez with a single count of drug conspiracy.  Valdez challenged the indictment with a Second Motion to Dismiss, alleging that the prosecution's and case agent's alleged misconduct warranted dismissal.  Magistrate Judge Hill held a three day hearing on this motion, followed by two months of post-hearing briefing.  The magistrate issued a Report and Recommendation ("R&R") on December 30, 2011, recommending against dismissing the indictment.  The district court adopted the R&R over Valdez's objection.

Valdez filed two additional pre-trial motions—a motion to dismiss the indictment under the Speedy Trial Act, and a motion to continue to allow Valdez additional time to transfer defense witnesses (in custody of the Bureau of Prisons) to court.  The district court convened a status conference to address these motions on January 27, 2012.  As an initial matter, the court mooted the

No. 12-31034

motion to continue, which included a prospective speedy trial waiver for future delay caused by the prisoner-transport, by arranging an expedited prisoner transfer.  Then, after discussion with the court, Richard verbally withdrew the Speedy Trial motion.  The court entered an order noting the withdrawal.

A nine-day trial began on February 6, 2012.  The jury returned a guilty verdict.  During sentencing, the United States moved for a hearing to establish Valdez's previous convictions pursuant to 21 U.S.C. § 851.  The motion referred to the filed Information documents and stated the government's intent to seek a sentence enhancement—life imprisonment.  The court convened a hearing on September 14, 2012, recessed to allow Valdez additional preparatory time, and re-convened the hearing on September 17, 2012.  Valdez objected to the sentence enhancement, arguing that the statutorily required notice was improperly served, causing procedural default.  The district court overruled this objection and imposed a life sentence.  This timely appeal followed.

## II

Valdez claims the district court violated his Sixth Amendment Confrontation Clause rights by restricting the scope of his cross-examination of Case Agent Catalan—preventing questions about Catalan's alleged misconduct, which precluded the jury from fully evaluating Catalan's credibility as a witness.

The Sixth Amendment guarantees the right of a criminal defendant to cross-examine witnesses against him.  U.S. CONST. amend. VI.  Cross-examination is an essential tool for testing the "believability of a witness" and the "truth of his testimony."  *See United States v. Jimenez*, 464 F.3d 555, 559 (5th Cir. 2006).  However, the right to cross-examine is not unlimited.  *United States v. Bernegger*, 661 F.3d 232, 238 (5th Cir. 2011).  A trial judge has significant latitude to impose reasonable limitations.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).   Here, Valdez did not make any

contemporaneous objections to preserve his Confrontation Clause challenge, so we review for plain error only. *United States v. Acosta*, 475 F.3d 677, 680 (5th Cir. 2007).

Rule 103(a)(2) of the Federal Rules of Evidence provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right is affected and "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Moreover, "this circuit will not even consider the propriety of the decision to exclude the evidence at issue if no offer of proof was made at trial." *United States v. Clements*, 77 F.3d 1330, 1336 (5th Cir. 1996) (quoting *United States v. Winkle*, 587 F.3d 705, 710 (5th Cir. 1979)).

According to Valdez, at the beginning of the trial, the court "*sua sponte* prohibited any discussion regarding cross-examination of Case Agent Catalan that led to the internal criminal investigation." However, the record shows no such limitation. Valdez draws his argument from several exchanges in pre-trial conferences, and at sidebar, in which the court merely indicated its present-sense-view that it was "not likely, unless [Valdez's counsel] can show me good cause, going to rehash everything that has been dealt with by way of the full hearing with the magistrate judge." This statement by the district court is not a prohibition or a ruling on the scope of cross examination. First, the statement is conditional, using "not likely." Second, the statement is neither final nor definitive—it offers Valdez the opportunity to address the issues upon showing "good cause." Whatever impact the district court's statements may have had on Valdez's counsel, the statements are not evidentiary rulings or prohibitions about the scope of cross-examination

In the same vein, Valdez also makes too much of the district court's statement that "[w]e're not getting into that," concerning Agent Catalan's alleged prior perjury. He claims this remark constituted an unequivocal limit

on the scope of cross-examination. The district court made the statement during a lengthy evidentiary conference to determine the admissibility of Catalan's prior statement for impeachment purposes.[1] The statement can be fairly interpreted to suggest that the district court was disinclined, in the future, to allow a sweeping cross-examination about Catalan's prior conduct. However, it is certainly not sufficient to constitute a blanket ruling about the permissible scope of cross examination for Agent Catalan. Thus, in order to prevail on his Confrontation Clause claim, Valdez must show some specific limitation of his cross-examination right.

Valdez cannot make such a showing because he did not even attempt to cross-examine Case Agent Catalan about his alleged misconduct in any of Catalan's five appearances on the stand. Consequently, under Federal Rule of Evidence 103, Valdez cannot claim error about the scope of cross-examination because the purportedly excluded evidence was neither "made known to the court by offer," nor "apparent from the context within which questions were asked." Here, there was no *ex ante* request about the scope of cross-examination and no attempt to actually cross-examine Catalan about his alleged misconduct. Because "no offer of proof was made at trial," we cannot consider the propriety of the district court's decision, if any, to exclude the evidence, *Clements*, 73 F.3d at 1336, and certainly cannot find plain error.[2]

---

[1] Valdez argued that Catalan's in-court testimony concerning who was driving a vehicle contradicted Catalan's prior written statement.

[2] Our determination is further supported by the fact that defense counsel informed the district court that he did not intend to engage this line of cross examination. During an evidentiary discussion, counsel for the government asked Valdez's counsel whether he intended to cross-examine Catalan about the alleged misconduct. The court noted for the record, several times, that defense counsel was "shaking his head no."

No. 12-31034

### III

Valdez asserts that the eighteen-month delay of trial, because of the internal investigation, violated his Sixth Amendment right to a speedy trial. However, Valdez did not make a Sixth Amendment claim sufficient to raise the issue before the district court, and to preserve the matter for appeal. "Even when the constitutional issue of a right to a speedy trial is involved, failure to raise it before or during trial has been held to waive the issue." *United States v. Scallion*, 548 F.2d 1168, 1174 (5th Cir. 1977). While a criminal defendant bears "some responsibility to assert a speedy trial claim," cases involving a constitutional right "must be approached on an ad hoc basis." *Id.* When considering the waiver doctrine in the context of a constitutional claim, there is a "long-standing presumption against waiver" and courts must "indulge every reasonable presumption" against it. *United States v. Thomas*, 724 F.3d 632, 643 (5th Cir. 2013). Even against this presumption, Valdez's failure to raise his constitutional speedy trial claim before the district court constitutes waiver.

To preserve a claim of error, a party typically must raise the issue before the trial court. *See generally* FED. R. EVID. 103. In so doing, "an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). Valdez urges that he raised the constitutional speedy trial claim in his Second Motion to Dismiss, and in his Objection to the Magistrate Judge's R&R. However, these documents contain only the following pertinent statement: "Ultimately, the government's [allegedly illegal actions] have denied [Valdez] his Fifth and Sixth Amendment Rights to due process and will eventually lead to the utter failure of the judicial system to assure him a fair trial in these matters as they have matured."

7

A sweeping, general allegation, such as this, that the government has taken actions that deny Sixth Amendment rights is not sufficient to preserve an objection on Sixth Amendment Speedy Trial grounds. A party must give the district court sufficient notice of the *nature of the alleged error* in order to address it. *Neal*, 578 F.3d at 272. A defendant has a duty to provide the district court with notice of his claim to allow the court an opportunity to provide a remedy. *Id.* Valdez's passing reference to the Sixth Amendment is insufficient in this regard.

Valdez seems to acknowledge that these statements lack the necessary specificity to preserve a claim of error.[3] He cites this courts recent decision in *United States v. Pham*, 722 F.3d 320 (5th Cir. 2013), in an attempt to show that a small amount of notice is sufficient to preserve a claim of error. However, *Pham* is distinguishable from the case at bar. In *Pham*, an ineffective assistance of counsel case, the court determined that a defendant's statement to counsel that he wanted to do "something to get less time" was sufficient notice to counsel to trigger counsel's duty to consult with his client about an appeal. *Pham* does not address the type of notice that a party must provide *to a trial court* in order to properly raise and preserve a constitutional claim. *See id.* at 325 ("We hold that this statement to counsel, when viewed in context, was enough to trigger counsel's constitutional duty to consult with Pham about an appeal.").

Because Valdez did not properly raise a Sixth Amendment speedy trial claim, he has waived this issue on appeal.[4]

---

[3] *"[E]ven without enunciating each phrase therein*, the defendant alerted the court and the government that Mr. Valdez was expressly availing himself of the protections afforded him under Sixth Amendment [sic] of the United States Constitution." Valdez Reply Br. at 24 (emphasis added).

[4] Valdez filed a Motion to Dismiss under the Speedy Trial Act which we discuss *infra*, Part IV. This motion is insufficient to preserve the *constitutional* issue for review. It is well established that Speedy Trial Act claims and Sixth Amendment speedy trial claims are independent claims. Our sister

No. 12-31034

**IV**

Valdez next claims that the district court failed to rule on his motion to dismiss under the Speedy Trial Act. Under the Speedy Trial Act, 18 U.S.C. § 3161, a trial must commence within seventy days of the indictment or initial appearance. The statute excludes certain periods of delay from the seventy day calculation. "If more than seventy non-excludable days pass between the indictment and the trial, the indictment shall be dismissed on motion of the defendant." *United States v. Stephens*, 489 F.3d 647, 652 (5th Cir. 2007). We review a district court's factual findings for a Speedy Trial Act ruling for clear error, and conclusions of law de novo. *United States v. Bieganowski*, 313 F.3d 264, 281 (5th Cir. 2002).

Valdez filed his motion to dismiss the indictment on Speedy Trial Act on January 24, 2012, ten days before the re-scheduled trial. He simultaneously filed a motion to continue the trial in order to make proper arrangements for transporting witnesses for trial, which included a speedy trial waiver for future delays. On January 27, 2012, the district court conducted a status conference to address the pending motions. At the conference, the district court informed Valdez's counsel that it made arrangements for expedited transfer of the prisoner-witnesses, and thus the motion for a continuance was moot. The conversation next turned to the Speedy Trial Act motion. Valdez claims that, during this conversation, the district judge made "alarming, unfairly prejudicial statements concerning Mr. Valdez and the case, even intimidating the defense attorney." As a result of this conversation, according to Valdez, "[under] intimidating pressure from the court that was based on its erroneous reasoning, and under the court's threat of sanctions, this motion was

---

circuits have held specifically that raising a claim on one ground does not preserve rights under the other. *See United States v. Wiley*, 997 F.2d 378, 385 (8th Cir. 1993); *United States v. Saavedra*, 684 F.2d 1293, 1297 (9th Cir. 1982).

withdrawn orally . . . ." In essence, Valdez claims that the district court bullied his trial counsel into withdrawing the motion and that the court should have heard and decided that motion notwithstanding this improperly obtained withdrawal. We disagree.

While the transcript of the status conference shows a lively, perhaps even tense, conversation about the procedural history and status of the case, Valdez's contention that the district court improperly intimidated counsel into withdrawing the Speedy Trial Act motion is without merit. Valdez quotes extensively, albeit selectively, from the conference transcript to demonstrate pressure to withdraw the motion. However, an entire reading of the relevant passages shows improper pressure was not asserted. In its first statement on the subject, the district court said: "[b]ut I'm just asking, do you wish to withdraw [the motion] now? If you don't fine, I guess, but it just seems rather foolish—I mean, I can't speak to that. I can't tell you that. If you think you should be able to do it, fine." This clearly establishes the district court's general view of the matter—counsel (and Valdez) "should be able to do it." It is true that the court later suggested the "strong possibility" that pursuing the motion might be deemed frivolous, and that "whatever consequence would flow from such a declaration by this Court will flow." However, the court phrased this reference in the conditional tense, and, moreover, made it during a conversation in which the overarching observation was that counsel retained the right to press the motion. The transcript shows the district court expressed concern that Valdez's counsel might be acting under the appearance of improper pressure. To this end, the court consistently reassured counsel, noting that there was no intent to intimidate and affirmed Valdez's right to

press the motion.[5]  "Federal judges have wide discretion with respect to the tone and tempo of proceedings before them; they are not mere moderators or hosts at a symposium." *United States v. Adkins*, 741 F.2d 744, 747 (5th Cir. 1984) (internal quotations and citation omitted).  Moreover, lawyers must preserve error even if doing so may be uncomfortable or may appear bothersome to the district court.  In order for status conferences to serve their key functions—among others, efficiency, planning, and dispute resolution—district court judges must be at liberty, within the rules of judicial conduct, to speak with counsel and to offer insights about the proceedings.  Here, the district court judge indicated that the motion to dismiss might be frivolous and possible grounds for sanctions.  Whether this assessment is correct or not, such a comment does not rise to the level of judicial impropriety.  The voluntary nature of the withdrawal is further supported by the fact that Valdez's counsel stated his explicit intention to withdraw the motion three times.[6]  Counsel even offered to withdraw it in writing.  After the court verified counsel's intent to withdraw the motion, the court entered an oral order to that effect with all parties present.  For the foregoing reasons, Valdez's withdrawal of the motion was not triggered by improper pressure from the district court.

In this case, Valdez was not personally present when his counsel withdrew the motion. He now claims that this decision was outside the scope

---

[5] The district court made the following statements during the course of the status conference: "I mean, I'm not trying to intimidate . . . .  Well, I don't want the record to reflect that I have intimidated you into taking this position . . . .  You understand you can file it if you want to . . . ?  And you understand you can keep it."

[6] Valdez's counsel stated, "I have been really cautions as to not attempt to file frivolous motions, and with that I will withdraw the motion." Additionally, counsel stated, "I'm not going to move forward with that motion. I don't want it to be considered frivolous, Your Honor." The final exchange on point follows: "THE COURT: You understand you can file it if you want to . . . .  MR. RICHARD. Yes, Your Honor.  THE COURT: And you do not wish to? MR. RICHARD: Yes, your honor, I do not wish to . . . . I'll withdraw it, Your Honor."

of the lawyer-agent relationship and that the withdrawal is therefore invalid. Statutory rights can presumptively be waived by litigants. *See United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). Certain fundamental rights are personal, and cannot be waived by counsel on a client's behalf: for example, the right to counsel, or the right to plead not guilty. "For other rights, however, waiver may be effected by action of counsel." *New York v. Hill*, 528 U.S. 110, 114 (2000). It does not appear that federal courts have specifically determined whether counsel must directly consult with the criminal-defendant before withdrawing a motion under the Speedy Trial Act. The government argues that the "Act itself provides for waiver by the simple failure to file a motion to dismiss," and that this evinces the ability for counsel alone to waive the Act's protections. We find significant merit in this argument. Unlike the fundamental rights that require the defendant's personal approval and court supervision—*e.g.*, right to counsel and the right to plead not guilty—the rights conferred by the Speedy Trial Act only come to a defendant's attention through counsel.

In sum, Valdez, through counsel, withdrew the motion to dismiss under the Speedy Trial Act. This withdrawal was not pursuant to undue pressure from the district court—counsel was at liberty to withdraw or continue pressing the motion. Consequently, the district court could not have erred in failing to rule on the motion since nothing remained before the court.

## V

Valdez challenges the district court's application of the 21 U.S.C. § 841(b)(1)(A) sentence enhancement, resulting in life imprisonment. He claims that the government did not properly serve notice of intent to seek a sentencing enhancement pursuant to 21 U.S.C. § 851. Valdez properly objected. Compliance with the statute is reviewed de novo. *United States v. Rios-Espinoza*, 591 F.3d 758, 760 (5th Cir. 2009).

No. 12-31034

21 U.S.C. § 851 establishes notice and filing requirements as necessary predicates to applying sentence enhancements under 21 U.S.C. § 841. Under § 851, "no person who stands convicted of an offense . . . shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." Valdez contends that the necessary documents were not properly served on his attorneys.[7] Valdez's argument is two-fold. First, he contends that the documents were served before his defense attorneys were officially designated "of record," rendering service technically deficient. Second, he contends that he was entitled to renewed service when the attorneys for the prosecution were replaced. Both contentions are without merit.

This court, in a series of § 851 cases, has held that exact compliance with service requirements is excused so long as the defendant was not substantially prejudiced by the noncompliance. In *United States v. Arnold*, 467 F.3d 880, 888 (5th Cir. 2006), the information of prior conviction contained an error, citing the incorrect statute as the basis of the prior conviction. This court remanded to the district court to "determine whether Arnold was *aware* before trial that a mandatory life sentence could be imposed upon his conviction." *Id.* (emphasis added). *Arnold* implies that a defendant's awareness of the sentencing enhancement is central to § 851. In *United States v. Steen*, 55 F.3d 1022, 1028 (5th Cir. 1995), a filed information of prior conviction incorrectly described Steen's second prior conviction. This court determined that, despite this error, Steen's motion indicated he knew the second conviction's actual

---

[7] Federal Rule of Criminal Procedure 49(b) governs service in a criminal case and incorporates by reference Federal Rule of Civil Procedure 5's methods of perfecting service. Service may be made on a defendant's attorney of record. FED. R. CIV. P. 5(b)(1).

basis. "Thus, Steen himself admitted that he *had notice* of the prior convictions before trial, and that the incorrect description of the second conviction did not mislead him." *Id.* (emphasis added). In *Steen*, the court focused on the defendant's actual knowledge of the government's intent to use the prior conviction, finding it a sufficient cure for the deficiency in the information. In *United States v. Walker*, 410 f.3d 754, 759 (5th Cir. 2005), this court focused on whether the defendant's substantial rights were harmed by any error in complying with § 851. "This court has refused to remand in the face of preserved error where, as here, there is *some fulfillment* of § 851(b) requirements." *Id.* (emphasis added). Taken together, these cases show that perfect compliance is not the gravamen of § 851. If the government has provided information sufficient to give the defendant actual knowledge of the intent to seek a § 851 enhancement, errors not otherwise impacting the defendant's substantial rights may be excused.

Valdez relies on *United States v. Dodson*, 288 F.3d 153 (5th Cir. 2002) for the proposition that lack of perfect compliance cannot be overcome by a defendant's actual knowledge. However, *Dodson* is distinguishable. In *Dodson*, the government *did not file* a separate information document as required by § 851. *Id.* at 159. Absent an actual filing, the government argued that the "indictment in this case, along with other filings and statements by the defendant" satisfied § 851. *Id.* The court determined that "Dodson's lack of surprise and admission of his prior conviction cannot overcome the government's failure to file the information required by § 851." *Id.* In *Dodson*, the government did not file an information at all. In the case at bar, the government served the information documents, but merely did so before counsel was formally designated "of record."

Valdez does not claim he was unaware of the contents of the information of prior convictions, or that he was unaware of the government's intent to seek

## No. 12-31034

the enhancement.  He does not assert that he has suffered any prejudice, or that he would have changed his decision to go to trial.  Rather, Valdez simply asserts that the information documents were filed too soon—before his second counsel was designated as "of record" by the clerk of court.  However, perfect compliance is not the gravamen of § 851. Consequently, Valdez's claim is without merit.

Valdez's also contends that new notice was required after the government changed trial counsel.  This argument fails as well.  By its plain text, § 851 contemplates a single act before trial or entry of a guilty plea.  The statute prohibits applying an enhanced sentence, "unless before trial, or entry of a plea of guilty, the United States Attorney files *an information* with the court (and serves a copy of *such information* on the person or counsel for the person) . . . ."  21 U.S.C. § 851(a)(1) (emphases added).  Key is that the information is filed and served before the defendant moves to resolve the merits of criminal indictment.  Nothing in the statutory language supports the notion that new information documents must be filed when the prosecuting attorney changes.  Rather, the statute contemplates a single information to put the defendant on notice of the government's intent to seek an enhancement and the grounds for it.[8]

---

[8] Cases from other circuits provide support the proposition § 851 does not require renewed filings upon a change of counsel.  *See Vadas v. United States*, 527 F.3d 16, 23 (2d Cir. 2007) (holding that filing and withdrawing an amended information does not invalidate the original filing); *United States v. Mayfield*, 418 F.3d 1017, 1018 (9th Cir. 2005) (holding that an information need not be refiled before a retrial); *United States v. Kamerud*, 326 F.3d 1008 (8th Cir. 2003) (holding new notice was not required after a superseding indictment issued); *United States v. Williams*, 59 F.3d 1180, 1185 (11th Cir. 1995) (holding that there was no need to refile information before a  new trial ordered after reversal on appeal).  If a mistrial, a superseding indictment, and a successful appeal do not require the government to refile notice, it follows, *a fortiori*, that a change in the prosecution team does not either.

No. 12-31034

In conclusion, the government complied with the notice requirements of § 851, and it was therefore appropriate for the district court to apply the sentencing enhancement in rendering its sentence.

**VI**

The judgment of the district court is AFFIRMED.